2012 Ark. App. 90

**Darin D. GRAHAM, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–712.**

Court of Appeals of Arkansas.

Jan. 25, 2012.

John Frank Gibson Jr., Monticello, for appellant.

Dustin McDaniel, Atty. Gen., Nicana C. Sherman, Little Rock, for appellee.

DOUG MARTIN, Judge.

A Chicot County jury found appellant Darin D. Graham guilty of driving while intoxicated. Graham raises several points on appeal: (1) the trial court erred in admitting his breath-alcohol test results into evidence; (2) the trial court erred in denying his directed-verdict motion on the issue of intoxication; and (3) the trial court erred by refusing to give Graham's proffered jury instructions. We affirm.

It is unlawful for any person who is intoxicated to operate or be in actual physical control of a motor vehicle. Ark.Code Ann. § 5–65–103(a) (Repl.2005). "Intoxicated" means influenced or affected by the ingestion of alcohol to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians. Ark.Code Ann. § 5–65–102(2) (Repl.2005). It is unlawful for any person to operate or be in actual physical control of a motor vehicle if at that time the alcohol concentration in the person's breath or blood is eight-hundredths (0.08) or more based upon the definition of breath, blood, and urine concentration in section 5–65–204. Ark.Code Ann. § 5–65–103(b). Arkansas Code Annotated section 5–65–204(a)(1) (Repl.2005) defines "alcohol concentration" as grams of alcohol per two hundred ten liters (210 l) of breath. Ark.

Code Ann. § 5–65–204(a)(1)(B). That section also provides:

> (b)(1)(A) A chemical analysis made to determine the presence and amount of alcohol in a person's blood, urine, or breath to be considered valid under this chapter shall be performed according to a method approved by the Department of Health or by an individual possessing a valid certificate issued by the department for this purpose.

Trooper Derek Byrd with the Arkansas State Police testified that, on July 17, 2010, at approximately 6:30 p.m., he came into contact with Graham and a passenger in Graham's truck on a paved county road. Trooper Byrd had received a tip from an off-duty sheriff's deputy who saw Graham drinking beer earlier that day while riding an all-terrain vehicle with children aboard. Trooper Byrd initiated a traffic stop of Graham's truck, which was pulling a double-axle trailer. According to Trooper Byrd, Graham was not wearing a seatbelt and had not activated the tail lights on the trailer. Upon approaching Graham, Trooper Byrd observed Graham's bloodshot eyes and smelled alcohol on Graham's breath. Trooper Byrd asked Graham if he had been drinking and whether he had any open containers inside the vehicle. Graham told Trooper Byrd that he had drunk only three beers and had two open containers. Trooper Byrd administered a portable breath test and then conducted several field-sobriety tests, including the horizontal-gaze nystagmus, the nine-step walk and turn, and the one-leg stand. Graham failed all three tests. Trooper Byrd also gave Graham what he called "the alphabet test" by asking Graham to recite his ABCs, starting with the letter "M." Trooper Byrd testified that Graham failed this unofficial test as well because Graham inserted an "L" after the "N." Graham then told Trooper Byrd that he had actually drunk a six-pack of beer. Trooper Byrd testified that, based on his training and experience, he believed Graham was impaired and not fit to safely operate a motor vehicle.

Trooper Byrd transported Graham to the Lake Village Police Department, where he read Graham his rights from a statement-of-rights form that was introduced into evidence. Trooper Byrd testified that he read each of Graham's rights to him after placing the form in front of Graham for him to read along with Trooper Byrd. The form provided in relevant part:

> If you take the test or tests requested by law enforcement, you may also, at your own expense, have a physician, registered nurse, lab technician, or other qualified person administer an additional breath, blood, or urine test. This department will assist you in obtaining such a test. Pursuant to Act 561 of 2001, if you choose to have an additional test, and are later found "Not Guilty" of violation of the Omnibus DWI Act, for this arrest, the arresting law enforcement agency will reimburse you for the cost of the additional test.

Graham placed his initials on blank lines beside other rights listed on the form; however, there was no space to initial beside the right regarding an additional test. Directly beneath the section explaining the right to an additional test, Graham initialed above "yes" in answer to the following question, which was presented in all caps: "DO YOU UNDERSTAND ALL PARTS OF THESE RIGHTS?" Also, Graham initialed above "no" in answer to the question: "DO YOU WANT ANOTHER TEST AT YOUR EXPENSE?" Graham's signature appears at the bottom of the form.

Trooper Byrd testified that detainees sometimes want an additional test "be-

cause they feel like they're innocent and maybe I've done something wrong." Graham was observed for thirty-one minutes before giving the first of two breath samples on the Intoximeter.[1] Graham's breath registered .132 on the first sample and .125 on the second sample. Trooper Byrd informed Graham that the final result was .125. Trooper Byrd conceded that he did not ask Graham again whether he wanted an additional test and did not advise Graham that taking an additional test could help him. Trooper Byrd released Graham into the custody of Graham's wife. Trooper Byrd testified that, in the past, he had taken other detainees, at their request, to have additional tests administered and pointed out that, if Graham had wanted an additional test later, Graham's wife could have taken him to the hospital to obtain another test.

Graham took the stand in his own defense and testified that he had drunk a six-pack of beer over the course of approximately six hours on the day he was stopped by Trooper Byrd. Graham stated that he informed Trooper Byrd prior to the field-sobriety tests that he had bad knees, which prevented him from maintaining his balance. Graham denied several aspects of Trooper Byrd's testimony with respect to Graham's actions during the field-sobriety tests. Graham testified that Trooper Byrd did not tell him at the police station that he might want to obtain an additional test at his own expense in order to dispute the results of the first one. According to Graham, by the time he was told that he had failed the test, he had already given up his right to obtain an additional test. Graham testified that he would have obtained an additional test if he had known why he might want one.

A motion for directed verdict is a challenge to the sufficiency of the evidence, which we consider before any other points on appeal. *Dye v. State*, 70 Ark.App. 329, 17 S.W.3d 505 (2000). Although it is listed as his second point on appeal, we first address Graham's argument that the trial court erred in denying his motion for directed verdict on the issue of intoxication. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resort to speculation or conjecture. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). In reviewing a challenge to the sufficiency of the evidence, this court views the evidence, including any that may have been erroneously admitted, in the light most favorable to the State and considers only the evidence that supports the conviction. *Simmons v. State*, 89 Ark.App. 34, 199 S.W.3d 711 (2004).

In challenging the sufficiency of the evidence with regard to the issue of intoxication, Graham contends that there was no evidence that he was a clear and substantial danger to himself or others on the road. Graham points out that Trooper Byrd stopped him for not wearing a seatbelt and not because Graham was driving erratically. Graham maintains that jurors would have had to speculate that Graham was so impaired that he could not safely operate a motor vehicle from the fact that

---

1. Regulations promulgated by the Arkansas Department of Health require that a breath sample be collected only after the subject has been under observation for an uninterrupted period of no less than twenty minutes immediately prior to collection. *See Arkansas Regulations for Alcohol Testing*, Section III, Part D, subpart 3.40 found at www.healthy.arkansas.gov/aboutADH/RulesRegs/Alcohol Testing.

his eyes twitched during the horizontal-gaze nystagmus test.

█ The statute that sets forth the elements of driving while intoxicated, Arkansas Code Annotated section 5–65–103, does not require a showing that the defendant was "driving the vehicle in a hazardous or negligent manner." *See Stewart v. State,* 2010 Ark.App. 9, at 2, 373 S.W.3d 387, 389 (citing *Beasley v. State,* 47 Ark.App. 92, 96, 885 S.W.2d 906, 908 (1994)). Rather, the statute requires only a showing that the defendant had "actual physical control of the vehicle" while intoxicated, and Graham does not deny that he was in actual physical control of his vehicle when he was stopped by Trooper Byrd.

█ Opinion testimony regarding intoxication is admissible, and it is then the jury's province to determine the weight and credibility of that evidence. *Henry v. State,* 2011 Ark. App. 169, 378 S.W.3d 832. Trooper Byrd testified that Graham had bloodshot eyes, smelled of alcohol, and failed three field-sobriety tests. *See Johnson v. State,* 337 Ark. 196, 987 S.W.2d 694 (1999) (holding that observations of police officers with regard to smell of alcohol and actions consistent with intoxication can constitute competent evidence to support a DWI charge).

Further, Graham admitted that he had drunk a six-pack of beer prior to his arrest, and the breath-alcohol test results on the Intoximeter indicated that Graham was over the legal limit of alcohol in that the test's final result was .125. In light of this evidence, we hold that there was substantial evidence of intoxication to support Graham's conviction for driving while intoxicated.

█ Graham argues that the trial court erred in admitting the breath-alcohol test results into evidence. We will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion and a showing of prejudice. *Edwards v. State,* 70 Ark.App. 127, 15 S.W.3d 358 (2000). Graham contends that Trooper Byrd failed to advise him of his rights in accordance with section 5–65–204(e), which provides:

(e)(1) The person tested may have a physician or a qualified technician, registered nurse, or other qualified person of his or her own choice administer a complete chemical test in addition to any chemical test administered at the direction of a law enforcement officer.

(2) The law enforcement officer shall advise the person *in writing* of the right provided in subdivision (e)(1) of this section and that if the person chooses to have an additional chemical test and the person is found not guilty, the arresting law enforcement agency shall reimburse the person for the cost of the additional chemical test.

(3) The refusal or failure of a law enforcement officer to advise a person of the right provided in subdivision (e)(1) of this section and to permit and assist the person to obtain a chemical test under subdivision (e)(1) of this section *precludes the admission of evidence relating to a chemical test* taken at the direction of a law enforcement officer.

Ark.Code Ann. § 5–65–204(e) (emphasis added).

According to Graham, the statement-of-rights form entered into evidence was insufficient proof that Trooper Byrd advised him of his right to an additional test. Graham argues that, because there was no space on the form for his initials directly beside the right pertaining to the additional test, Trooper Byrd cannot prove he actually advised Graham of that right. Whether the statement-of-rights form was sufficient to apprise Graham of his right to an additional test was a matter for the jury, which determines the weight to be

given evidence. *See Isbell v. State,* 326 Ark. 17, 931 S.W.2d 74 (1996). Further, it is well settled that it is the province of the jury to determine the credibility of witnesses, and the jury apparently believed Trooper Byrd's testimony. *See Johnson, supra.*

Although Graham now asserts that Trooper Byrd did not advise him of his right to obtain an additional test, Graham did not testify to that at trial; rather, Graham testified that Trooper Byrd did not advise him that he should obtain an additional test in order to dispute the final result of the first test. A plain reading of the statute does not require any such advice or encouragement by Trooper Byrd. *See Reynolds v. State,* 96 Ark.App. 360, 241 S.W.3d 765 (2006). In any event, substantial compliance with statutory provision (e)(3) is all that is required. *Id.* Trooper Byrd substantially complied with section 5–65–204(e), given Trooper Byrd's testimony that he placed the statement-of-rights form in front of Graham and read each right aloud, including the right concerning an additional test. Moreover, the form clearly indicates that Graham understood all of his rights and that Graham did not want an additional test at his own expense.

Viewing the statement-of-rights form as a whole and considering Trooper Byrd's testimony with respect thereto, we cannot say that the trial court abused its discretion in admitting the breath-alcohol test results into evidence. Further, Graham cannot show prejudice because, even without the breath-alcohol test results, there was substantial evidence to support Graham's conviction, given Trooper Byrd's testimony regarding Graham's impairment at the time of his arrest. *See, e.g., Cooley v. State,* 2011 Ark. App. 175, 2011 WL 714978 (holding that a conviction for DWI is not dependent upon evidence of blood-alcohol content in view of sufficient other evidence of intoxication).

Finally, Graham argues that the trial court erred in refusing to give his proffered jury instructions. We review a trial court's decision regarding whether to give a proffered jury instruction for an abuse of discretion. *Clark v. State,* 374 Ark. 292, 287 S.W.3d 567 (2008). Generally, a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Id.* A non-AMI Criminal instruction, however, should be given only when the trial judge finds that the model instruction does not state the law or that AMI Criminal does not contain a needed instruction on the subject. *Id.* The supreme court has stated that, just because an appellant's proffered instructions contain correct statements of the law, it does not mean that it was error for the trial court to refuse to give them. *Id.*

The trial judge read the following model jury instruction at trial:

> Darin Graham is charged with the offense of driving while intoxicated. To sustain this charge the State must prove beyond a reasonable doubt that Darin Graham, while intoxicated, operated or was in actual physical control of a motor vehicle, or of course you must find that Darin Graham operated or was in actual physical control of a motor vehicle while the alcohol concentration in his breath was eight-hundredths [0.08] or more as determined by a chemical test of his breath.[2]

Graham objected to the model instruction on the basis that it did not address the 2001 amendment to section 5–65–103,

---

**2.** The trial judge also read the following definition:

> A chemical test is one that analyzes a person's breath or other bodily substance for

which lowered the presumptive intoxication threshold from .10 to .08 and eliminated the phrase "as determined by a chemical test." Graham proffered two jury instructions that made no mention of a chemical test, and those non-AMI Criminal instructions were rejected by the trial court.

Graham argues that, while the model instruction correctly stated *former* law, the phrase "as determined by a chemical test of his breath" is no longer an element of the offense of driving while intoxicated. Graham contends that instructing the jury that he was guilty, if there was proof beyond a reasonable doubt that his breath-alcohol concentration was .08 or more "as determined by a chemical test," was a misleading, unfair, and impermissible comment on the evidence that was binding on the jury. Graham maintains that the model instruction placed too much emphasis on the chemical test, such that the test determined his guilt, as opposed to the jury.

This court recently found this very argument unpersuasive. *Jones v. State*, 2011 Ark. App. 403, 2011 WL 2140381. As in *Jones*, the proffered jury instructions by Graham were virtually identical to the model instruction read by the trial judge, with the only significant distinction being the model instruction's reference to a chemical test and definition thereof. The *Jones* court held:

> We agree with Jones that the phrase "chemical test" was excised from section 5–65–103 by the 2001 amendment. However, we do not agree that eliminating that phrase also eliminated any reference to how the blood-alcohol˙ [sic] content was to be determined. As noted previously when we quoted section 5–

65–103(b), that section incorporates by reference section 5–65–204. That section concerns "chemical analysis," not chemical testing. However, we cannot say that the differences in the wording are in any way misleading to the jury. Chemical analysis is accomplished through chemical testing. The plain wording of the statutory scheme indicates that the legislature intended to establish the alcohol concentration by approved tests, which the model instruction references. As noted, the proffered instruction omits any reference to testing or analysis. Accordingly, the proffered instruction is a somewhat incomplete statement of the law. We hold that it was not an abuse of discretion for the trial court to reject the proffered instruction and give the model instruction.

*Id.* at 3.

We cannot say that the trial court abused its discretion in rejecting Graham's proffered jury instructions because the omission of any reference to chemical testing or chemical analysis failed to take into account section 5–65–103's incorporation of section 5–65–204, which describes "the chemical analysis of a person's blood, urine, or breath." Accordingly, the model jury instruction represented a more accurate reflection of the law.

For all of the reasons set forth herein, we affirm Graham's conviction for driving while intoxicated.

Affirmed.

GRUBER and BROWN, JJ., agree.

---

determining the alcohol content in the blood or breath. The test and the methods by which it is performed must be approved by the Arkansas State Department of

Health, or the test must be made by the State Crime Laboratory, or be given by a person possessing a valid permit to administer it.