

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-14-445

| | |
|---|---|
| JEFFERY E. JACKSON<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** March 11, 2015<br><br>APPEAL FROM THE CALHOUN COUNTY CIRCUIT COURT<br>[NO. CR2013-10-1]<br><br>HONORABLE HAMILTON H. SINGLETON, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Jeffery E. Jackson appeals his conviction of theft of property. On appeal, Jackson argues that the circuit court erred when it denied his evidentiary objection and his motion for a directed verdict. We affirm.

Jackson served as the Hampton police chief in 2012 and 2013. In October 2012, the mayor of Hampton resigned, which left the city without a mayor for several months. During those months, Jackson assumed the role of safety supervisor and directed the daily operations of the water department.

In March 2013, in association with his role as safety supervisor, Jackson was charged with theft of property. Specifically, the State alleged that:

> [Jackson] committed the offense of theft of property . . . by aiding, assisting, and encouraging others and in complicity with such persons, [Jackson] exercised unauthorized possession or control over personal property, herein scrap metal, belonging to a third party and valued at more than $1,000 but less than $5,000.

The State also charged Jackson with two counts of accomplice to the possession of a firearm by a convicted felon. A jury trial was held on January 14, 2014.

At trial, Justin Schinz, Hampton's waterworks superintendent, testified for the State. He stated that he works on the city crew with Corey Thomas and Odie Strong and the crew followed Jackson's commands when he served as safety supervisor. Schinz stated that one Friday, Jackson asked the crew to clean up the Hampton baseball field. He stated that Jackson and the crew went to the baseball field along with Vernist McCraney, a 309 inmate.[1] Schinz testified that he saw a stack of oil pipes at the field and on the following Monday, he saw the same pipes loaded on the city's trailer near a sewer pond on city property. He explained that the trailer was hidden in some bushes near the pond. He also stated that he observed McCraney cutting the pipes into shorter lengths with the city's torch. Schinz further testified that after McCraney finished cutting the pipes, Strong borrowed his (Schinz's) city-owned truck to haul the pipes to a scrap yard in Camden. He testified that Jackson later told him that McCraney sold the pipes for Christmas money.

Corey Thomas also testified for the State. He testified that he went to clean up the baseball field with the city crew, Jackson, and McCraney. He explained that he was bush hogging the field when Jackson and McCraney approached him. He stated that he got off the bush hog and they discussed the pipes stacked along the field's fence. He testified that Jackson told him to haul the pipes to the city shop. Thomas told Jackson that he did not want to take the pipes because they belonged to the baseball field, not the city. Thomas stated that Jackson

---

[1]A 309 inmate is an Arkansas Department of Correction inmate who is on a work-release program with a local law-enforcement agency to perform certain chores. *See* Ark. Code Ann. § 12-30-401 (Repl. 2009).

then told McCraney to haul the pipes to the shop, and after their conversation, Thomas got back on the tractor and continued to bush hog the field. Thomas testified that the next day, Jackson told him to drop off the city's twenty-foot trailer at the ballpark and Thomas did as Jackson requested. Thomas further testified that on the following Sunday, McCraney and a police officer came to his home and then they went to the baseball field. At the field, McCraney asked Thomas to haul the pipes to the city shop. Thomas testified that his truck could not haul the loaded trailer so he went back home. He stated that on the following Monday, he saw the trailer loaded with the pipes at the sewer pond on city property and McCraney was cutting the pipes into shorter pieces.

Odie Strong testified that he saw the pipes at the baseball field and then on a city trailer near the sewer pond. He testified that McCraney cut the pipes into shorter lengths. He stated that after McCraney shortened the pipes, Jackson told Strong to borrow Schinz's city-owned truck to haul the pipes to a scrap yard in Camden and he did so. He explained that McCraney received the money from the sale of the pipes. Strong also testified that Jackson told him that if anyone asked about the pipes to say they were just "cleaning up."

Brian May also testified for the State. He explained that he is the former president of Hampton Recreation, Inc., a nonprofit organization that coordinates a summer baseball league for children in Hampton. He stated that Hampton Recreation had fifty pieces of oil-field pipes at the baseball field and the pipes were about thirty-five feet long. He also testified that the pipes cost about a dollar a foot. He explained that Hampton Recreation used the pipes to repair fences and planned to build a roof for the bleachers. He testified that he and some volunteers were working at the baseball field and discovered the pipes were missing.

At the conclusion of the State's case, Jackson moved for a directed verdict. He argued that the State presented no evidence that Jackson ever possessed the pipes or was involved in the taking of the pipes. The circuit court denied Jackson's motion. Jackson then presented his case.

Jackson testified on his own behalf. He stated he was a certified law-enforcement officer for seven-and-a-half years. He testified that he did not give anyone permission to haul or sell the pipes and did not authorize the use of the city's equipment. On cross-examination, the State asked Jackson whether he had taken an ethics course during his law-enforcement certification and if he had signed a law-enforcement code of ethics. Jackson's counsel objected, arguing that the line of questioning "was not relevant and . . . a waste of time." The circuit court overruled Jackson's objection.[2]

At the conclusion of his case, Jackson renewed his motion for a directed verdict. The court again denied the motion. The jury then acquitted Jackson of the weapons charges but convicted Jackson of theft of property and fined him $5000. Jackson filed the instant appeal. Jackson asserts that the circuit erred when it (1) denied his evidentiary objection and (2) denied his motion for directed verdict.

A motion for directed verdict is a challenge to the sufficiency of the evidence, which we consider before any other points on appeal. *Graham v. State*, 2012 Ark. App. 90, at 5, 389 S.W.3d 33, 36. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is

---

[2]After asking Jackson whether he signed the law-enforcement code of ethics, the State attempted to admit the code of ethics into evidence. However, Jackson objected, and the circuit court sustained his objection.

evidence of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other without resort to speculation or conjecture. *Id.* In reviewing a challenge to the sufficiency of the evidence, this court views the evidence, including any that may have been erroneously admitted, in the light most favorable to the State and considers only the evidence that supports the conviction. *Id.*

Jackson argues that the State presented insufficient evidence to support his conviction of theft of property because there is no evidence that he ever possessed the pipes. Arkansas Code Annotated section 5–36–103(a)(1) (Repl. 2013) provides that "a person commits theft of property if he . . . knowingly [t]akes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property." A theft of property is complete when a defendant exercises unauthorized control over the property with the intent to deprive its owner of the property; he is not required to also "take" the property to complete the crime. *Cole v. State*, 2013 Ark. App. 492, at 5.

In this case, even though there is no evidence that Jackson actually possessed the pipes, the State presented sufficient evidence that Jackson exercised unauthorized control over the pipes. Thomas and Strong, Jackson's subordinates, testified that Jackson directed them to take the pipes away from the baseball field and to the scrap yard. Specifically, Thomas testified that Jackson told him to haul the pipes to the city shop and when he refused and informed Jackson that the pipes belonged to the baseball field, Jackson told McCraney to take the pipes. Thomas also testified that Jackson asked him to drop off the city's trailer at the baseball field by the pipes and he later saw the trailer loaded with the pipes on city property. Further, Strong

testified that Jackson directed him to haul the pipes to the scrap yard and McCraney received the money from the sale of the pipes. Strong also testified that Jackson told him to say the city crew was "cleaning up" if anyone asked about the missing pipes. On this evidence, a fact-finder could reasonably conclude, without resorting to speculation or conjecture, that Jackson exercised unauthorized control over the pipes and committed the offense of theft of property.

Jackson claims that Strong's testimony is unreliable because he was on parole and had made inconsistent statements to police. However, the credibility of any witness's testimony is to be assessed by the trier of fact—which may believe all, part, or none of it. *Corey v. State*, 2014 Ark. App. 441, at 6, 439 S.W.3d 731, 735. Here, the jury apparently gave credibility to Strong's testimony.

Jackson next argues that the circuit court erred when it allowed the State to question him about the ethics course he took during his law-enforcement certification. Specifically, Jackson argues that the line of questioning was highly prejudicial to him under Arkansas Rule of Evidence 403 and irrelevant to the offense of theft of the property under Arkansas Rule of Evidence 401.

As to Jackson's prejudicial argument, his argument is not preserved for our review. Our supreme court has repeatedly held that arguments not raised below will not be addressed for the first time on appeal. *See Frye v. State*, 2009 Ark. 110, 313 S.W.3d 10. Parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of their objections as presented at trial. *See id.* Jackson's counsel objected to the line of questioning, stating that it "was not relevant and it [was] a waste of time." Jackson did not argue that the

probative value of the evidence was outweighed by the danger of unfair prejudice. Accordingly, Jackson's Rule 403 argument is not preserved for our review.

As to Jackson's relevancy argument, the circuit court properly denied his objection. A circuit court's ruling is entitled to great weight specifically relating to the admission of evidence under Rule 401, and this court will not reverse the circuit court's ruling absent an abuse of discretion and a showing of prejudice. *Eubanks v. State*, 2009 Ark. 170, 303 S.W.3d 450. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. Where a defendant himself initiates discussion of a certain subject, he opens the door to a line of questioning by the State. *Jordan v. State*, 2013 Ark. 469.

Here, Jackson asserts that the questions about the ethics course were irrelevant because the offenses he was charged with do not require proof of any ethics violations. However, Jackson opened the door to the questioning when he said that he was a certified law-enforcement officer. Accordingly, the circuit court did not abuse its discretion when it allowed the State to ask Jackson whether he took an ethics course and signed a code of ethics during his law-enforcement certification.

Affirmed.

HIXSON and HOOFMAN, JJ., agree.

*McKissic & Associates Law Firm, P.L.L.C.*, by: *Gene E. McKissic, Sr.*, and *Jessica S. Yarbrough*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.