SLIP OPINION

Cite as 2015 Ark. App. 187

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–14–582

| | | |
|---|---|---|
| | | **OPINION DELIVERED** MARCH 18, 2015 |
| TIMOTHY A. FIVEASH | | |
| | APPELLANT | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NOS. CR 2013-208-4; CR 2013-209-3] |
| V. | | |
| | | HONORABLE ROBERT McCORKINDALE, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

On March 31, 2014, Timothy Allen Fiveash was convicted in the Boone County Circuit Court of driving while intoxicated and driving on a suspended license.[1] On appeal, he argues that there was insufficient evidence to convict him of either count, and he contends that the trial court erred in admitting as evidence a copy of his restricted license.[2] We affirm.

---

[1]The State's brief contains a footnote indicating that appellant died on November 5, 2014. Arkansas Rule of Appellate Procedure–Criminal 1(c) (2014) provides that the death of a defendant does not abate an appeal. The rule further provides that Arkansas Rule of Civil Procedure 25(a) (2014) controls how the appeal should continue. Because Rule 25(a) has not been followed, as no suggestion of death has been filed of record and no motion for substitution of parties has been made as a result thereof, this court proceeds with the appeal as if uninformed of appellant's death.

[2]Appellant was convicted of both counts in the Boone County District Court and appealed to the circuit court, which resulted in his conviction in separate sentencing orders filed on March 31, 2014, one reflecting his conviction for driving while his license was canceled, suspended, or revoked, and another reflecting his conviction for driving while intoxicated.

At appellant's bench trial, Boone County Deputy Gene Atwell testified that he was the first officer on the scene of the one-car accident on Quail Road, where appellant's vehicle had left the roadway, tangled in a fence, and landed in a ditch on the right side of the road. Atwell described appellant as "excited" and said that appellant would not "stand still long enough to talk to me." Atwell testified as follows:

> I asked him to walk up the hill and stand in front of my patrol car. The ditch was four to five feet, so it was a small hill. Mr. Fiveash did not comply with my request the first two times. He complied on my third request. He got to the top of the hill and asked which car. I told him the only car with the blue lights on. At that point, he started to walk down the road away from my vehicle saying he needed to find somebody to get his vehicle out. I asked him to come back to the car. He stopped and looked at me. He said something I couldn't hear, so I went after him and asked him to come back to my vehicle. We walked to the front of my car. I tried to talk to him and he took off down the road the other way. Once again, I went and got him and brought him back to the front of my vehicle. He was very hard to talk to. He was all over the place and I couldn't get his attention.

Atwell said that appellant denied having taken any drugs or drinking, and again, appellant began to walk away.

Deputy Brad Duck testified that he performed field-sobriety tests on appellant, and the tests were videotaped from his police vehicle. The videotape was introduced and played for the circuit court. Duck said that appellant failed the horizontal-gaze-nystagmus test because appellant kept turning his head rather than following the officer's finger movement with his eyes. Appellant also failed the walk-and-turn test, where appellant was to stand with one foot in front of the other, heel to toe, hands down to the side, and take a series of nine steps, at the end of which, he was to turn around and walk back. Duck said that appellant was unable to pay attention to his commands. Finally, appellant was unable to perform the one-leg stand,

which was holding one foot six inches off the ground for several seconds. Duck said that appellant tried several times and almost fell over at one point. Appellant denied having had any alcohol, and Duck observed that appellant would not follow any commands and would not pay attention. Appellant told Duck that he had problems with his equilibrium and his prostate.

Duck arrested appellant and found Adderall, a prescription medication, on appellant's person. Duck said that, when they arrived at the sheriff's office, appellant passed the breathalyzer test after he signed the "rights form." Duck testified that appellant was unable to provide a urine sample for testing, which was reflected as a refusal.

Appellant objected to any testimony about the status of his driver's license from Duck, claiming that the testimony was inadmissible hearsay. The State claimed that the objection was premature. The circuit court overruled the objection.

Duck testified that, at the jail, appellant gave him a restricted-driving permit, but Duck said that he did not have the actual permit from that day, as it had been "sent down with the DWI stuff to the State." Appellant objected to the admission of a copy of the permit, arguing that the defense was entitled to see the actual permit, and the State argued that the copy should be admitted based on the officer's testimony. The circuit court overruled the objection and admitted the copy. When Duck testified that appellant was allowed to drive under certain conditions, appellant objected to his testifying about what the permit allowed. The State maintained that the document could "speak for itself." Thereafter, testimony continued, and no ruling was reflected. Duck testified that he gave appellant a citation for

SLIP OPINION

driving on a suspended license because, according to the information appellant provided, appellant was not obeying the permit.

Investigator Brian Watson, a drug-recognition expert, testified that his impression, after talking with appellant that night, was that appellant was reacting to a central-nervous-system stimulant. He said that appellant was talking really fast and displaying bruxism, which is grinding of the teeth.

Appellant moved for a directed verdict, arguing that the State failed to prove that he was intoxicated under the applicable statute's definition. Appellant further argued that, because the State failed to show compliance with Arkansas Code Annotated section 5-65-204(d) (Supp. 2013), which provides that a law-enforcement officer's failure to advise a person in writing of his right to have an additional chemical test precludes the admission of evidence relating to a chemical test taken at the direction of the law-enforcement officer, any evidence from any test was inadmissible.

The State argued that appellant moved for admission of the test.[3] The State claimed that there was enough evidence presented to prove that appellant was impaired to the extent that he should not be driving. The circuit court denied the motion.

Appellant testified that he had a urinary-tract problem and problems with his equilibrium. He explained that he was traveling back to Fayetteville after having driven to

---

[3]A review of the record reveals that the circuit court admitted Defendant's Exhibit B, which reflects the negative results of the breathalyzer test. The record also contains Plaintiff's Exhibit 2, which is entitled Arkansas Statement of Rights, and reflects that appellant submitted to a "breath" test and a "urine" test, but the "urine" test was marked, "Refused." Appellant's motion for directed verdict does not specify to which "test" he was referring.

Harrison for a copy of a school transcript. He said that he did not realize that the school would not be open on a Saturday. He claimed that he had asked "about ten times" to have his own blood test done after the accident, but this was never allowed. He claimed that they told him that a urine test was better than a blood test. He said that he did not refuse the urine test, but he told them that he could not urinate because he was having prostate problems. He said that he offered to take a blood test and "they would not do it." He continued,

> They did not advise me that I had a right to have my own test at my own expense. I knew I did. I was going to pay for it. I had the money on me. I had medication on me . . . It is hard when I am in school so it is for focus. I do not even take as much as I am supposed to take. If I do not take it, I do not know what is going on. It is confusing at the least. I do not take as much as I am supposed to because it makes me feel like I am high.

On cross-examination, appellant admitted that he drove to his mother's house every weekend and then sometimes even through the week. He said that he must have given the original driving permit to the officer and that his signature appeared at the bottom. He said that he was using that permit for permission to drive and that he was told he could go to school or drive in emergencies. He said that his mother had been about to die and that was an emergency.

Appellant moved for a directed verdict, arguing that the State failed to show that he was intoxicated. He claimed that there had been no testimony that Adderall would affect his driving ability. He argued that his testimony regarding his equilibrium and his prostate, coupled with his testimony that he asked for a blood test but was denied, required the circuit court to find him not guilty on the DWI charge. He also argued that he was charged with driving on a suspended license for DWI, and no evidence had been submitted on that point.

SLIP OPINION

The State argued that the evidence of the videotape and the officers' testimony proved that appellant was impaired and that he admitted that he had a restricted permit. The circuit court denied the motion and found appellant guilty of driving on a suspended license and driving under the influence. He was sentenced to ten days in jail and one year of probation. This appeal timely followed.

A motion for directed verdict is a challenge to the sufficiency of the evidence, which we consider before any other points on appeal. *Graham v. State*, 2012 Ark. App. 90, at 5, 389 S.W.3d 33, 36. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other without resort to speculation or conjecture. *Id.* In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the conviction. *Id.*

Appellant claims that insufficient evidence was introduced to support his conviction for driving on a suspended license. He first contends that the admission of the restricted-driving permit was in error, as the copy was not the best evidence of the restriction on his license. To prove the content of a writing, the original writing is required, except as otherwise provided in the Arkansas Rules of Evidence or by statute. Ark. R. Evid. 1002 (2014). Duplicates may be admitted unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would

SLIP OPINION

be unfair to admit the duplicate in lieu of the original. Ark. R. Evid. 1003 (2014). Appellant claims that his license, whether restricted or suspended, was the fact to be proved. Therefore, he contends that the best-evidence rule was applicable and the objection to the permit should have been sustained, as its admittance was prejudicial.

A trial court has broad discretion in evidentiary rulings, and this court will not reverse a trial court's ruling on the introduction of evidence unless the lower court has abused that discretion. *Williams v. State*, 2011 Ark. App. 675, 386 S.W.3d 609. Moreover, even when a circuit court errs in admitting evidence, the appellate courts will affirm a conviction and deem the error harmless if the evidence of guilt is overwhelming and the error is slight. *Marmolejo v. State*, 102 Ark. App. 264, 284 S.W.3d 78 (2008).

We hold that the circuit court did not abuse its discretion by overruling the objection. Deputy Duck testified that he performed field-sobriety tests on appellant, and he arrested appellant for DWI. Duck said that appellant gave him his restricted-driving permit and that he did not have the actual permit at trial that appellant had given to him. Appellant testified that he gave the original permit to Deputy Duck, that his license was restricted, and that the restricted license permitted his driving to school and in emergencies. Because there was no genuine question raised as to the authenticity of appellant's restricted permit, the circuit court did not abuse its discretion in admitting the duplicate copy.

The State claims that, to the extent appellant challenges the witness testimony with regard to the driver permit, he failed to obtain a specific ruling from the circuit court. We

7

agree. Because appellant failed to obtain a specific ruling, he failed to preserve the issue for appeal. *Mason v. State*, 2014 Ark. App. 285, 435 S.W.3d 510.

Second, appellant argues that there was insufficient evidence to support a conviction under Arkansas Code Annotated section 5-65-105 (Repl. 2005), which provides that it is unlawful to drive with a suspended license. He contends that the State failed to prove that his license was suspended, as his testimony was that he was driving on a restricted permit and that "it was an emergency." Under Arkansas Code Annotated section 5-65-120 (Supp. 2013), the Office of Driver Services may modify the denial or suspension of a driver's license in a case of extreme and unusual hardship by the issuance of a restricted driving permit when certain conditions have been met. The copy admitted in evidence showed that the Office of Driver Services had issued a restricted permit for appellant to drive from his home in Fayetteville to school, drug-and-alcohol education classes in November, and for medical emergencies. According to his own testimony, appellant was not following the restrictions given; thus, substantial evidence supported his conviction.

Third, appellant claims that the circuit court erred in denying his motion for directed verdict as to his DWI charge. Arkansas Code Annotated section 5-65-103(a) provides that it is unlawful for any person who is intoxicated to operate or be in actual physical control of a motor vehicle. "Intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of

physical injury to himself and other motorists or pedestrians. Ark. Code Ann. § 5-65-102(2) (Repl. 2005).

Appellant contends that it was the State's burden to show beyond a reasonable doubt that he was intoxicated by either alcohol or drugs. He asserts that he passed the breathalyzer tests, and he indicated, as was evidenced by the video, that he had an equilibrium problem. He maintains that there was no expert testimony that Adderall has any effect on driving ability. He argues that Deputy Duck incorrectly administered the horizontal-gaze-nystagmus test because he did not turn off his emergency lights. Finally, he contends that there is no blood test offering proof of any amount of substance in his system. Therefore, he claims that the evidence is not forceful enough to compel a conclusion and his conviction should be reversed.

We disagree. Opinion testimony regarding intoxication is admissible. *Mace v. State*, 328 Ark. 536, 944 S.W.2d 830 (1997) (where the Arkansas Supreme Court found the evidence was sufficient where officers testified that the defendant was intoxicated, noting bloodshot eyes, unsteadiness, and hanging on the vehicle for support; the defendant failed all four of the field-sobriety tests administered). The evidence here was that appellant's vehicle landed in a ditch as the result of a one-vehicle accident; appellant would not stand still and was excited; appellant would not follow commands; and appellant failed three field-sobriety tests. There was evidence that appellant had taken his prescription medication, Adderall, and a drug-recognition expert testified that appellant was talking fast and grinding his teeth. The

9

drug-recognition expert said that his impression was that appellant was affected by a central-nervous-system stimulant. Thus, sufficient evidence supported the DWI conviction.

Affirmed.

KINARD and BROWN, JJ., agree.

*Kimberly Eden*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Kehler Shue*, Ass't Att'y Gen., for appellee.